IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.D, a minor, by and through his next friend, JANE DOE,<br><br>*Plaintiff*,<br><br>v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | Civil Action No.: 1:25-cv-01349<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO FILE PSEUDONYMOUSLY |

**MEMORANDUM IN SUPPORT OF MOTION TO PROCEED PSEUDONYMOUSLY**

**I.    BACKGROUND**

J.D. is a child with disabilities who is committed to the custody of the Department of Youth Rehabilitation Services ("DYRS"). On May 5, 2022, Defendant Anthony Lloyd—a DYRS employee—punched J.D. in the mouth as a supervisor—Defendant Bernell Davis—watched. Defendant Lloyd's punch fractured J.D.'s jaw in two places. With Defendant Davis still watching, Defendant Lloyd then climbed on top of J.D. as he lay bleeding and strangled him. The attack forced J.D. to be hospitalized and undergo surgery to piece his jaw back together. Years later, J.D. still experiences pain from the fractures and trauma from the assault.

J.D. brings this action by and through his mother to seek redress for the severe and long-lasting harm he has suffered and to challenge Defendant District of Columbia's broader policy of assaulting children in DYRS custody. He seeks a declaration that Defendants have violated the Fifth and Eighth Amendments of the United States Constitution and District of Columbia law. J.D. also seeks damages and injunctive relief, including changes to District of Columbia policies, that will address staff-on-youth assaults.

1

Due to the sensitive information J.D.'s claims entail, such as medical and mental health information, allegations of physical abuse, and juvenile delinquency proceedings; the risk of retaliation J.D. faces as he is currently still committed to DYRS custody; and his status as a minor, J.D. requests that this Court allow him to proceed under the initials J.D. and allow his mother to proceed under the pseudonym Jane Doe.

## II.  LEGAL STANDARD

While a complaint must generally identify the parties, *see* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . ."); Local Civ. R. 5.1(c) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party."), that rule is not absolute. Under Federal Rule of Civil Procedure 5.2(a)(3) and Local Civil Rule 5.4(f)(2), minors have a presumptive right to appear using only their initials. Courts extend additional protections to litigants and allow them to proceed under pseudonyms when litigants' "legitimate interest in anonymity" outweighs any "countervailing interests in full disclosure." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019).

To evaluate whether a litigant has overcome the "presumption in favor of disclosure" and may proceed under a pseudonym, courts in this Circuit apply a "'flexible and fact driven' balancing test." *Doe v. Fed. Republic of Germany*, 680 F. Supp. 3d 1, 4 (D.D.C. 2023) (first quoting *In re Sealed Case*, 931 F.3d at 96; and then quoting *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020)). That test looks to five "guideposts":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

2

> [3] the ages of the persons whose privacy interests are sought to be protected;
> [4] whether the action is against a governmental or private party; and, relatedly,
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*In re Sealed Case*, 931 F.3d at 97 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)) (brackets in original). While the D.C. Circuit has laid out these specific factors, the list is "non-exhaustive." *Chang v. Republic of S. Sudan*, 548 F. Supp. 3d 34, 37 (D.D.C. 2021) (quoting *In re Sealed Case*, 971 F.3d at 326); *see also In re Sealed Case*, 931 F.3d at 97 (cautioning that courts "should not . . . engage in a wooden exercise of ticking the five boxes"). A litigant also need not meet all five factors to justify proceeding anonymously. *See, e.g.*, *Emp. #1 v. Dep't of Behav. Health*, 694 F. Supp. 3d 110, 115 (D.D.C. 2023) (permitting plaintiff to proceed under a pseudonym even though multiple factors weighed in favor of disclosure). Lastly, "[i]n cases where the identities of a minor and parent or guardian are 'inextricably intertwined,' courts allow parents or guardians to proceed under pseudonym when suing on the minor's behalf." *Asylumworks v. Wolf*, No. 1:20-cv-03815, 2020 U.S. Dist. LEXIS 264893, at *8 n.2 (D.D.C. Dec. 23, 2020) (quoting *Eley v. District of Columbia*, No. 16-cv-806 , 2016 U.S. Dist. LEXIS 147955, at *2 (D.D.C. Oct. 25, 2016)).

### III.   ARGUMENT

J.D. and his mother have a strong interest in proceeding anonymously in this litigation that far outweighs any countervailing interests in disclosure. This litigation entails sensitive and highly personal information, such as J.D.'s medical and mental health history, his experience of physical abuse, and his confidential juvenile court records. J.D. has a legitimate and credible fear that, if his identity is discovered, he will face retaliation and mental harm. J.D. is also a minor. And he brings this action against parties, including the government, for whom there will be no risk of

3

unfairness if J.D. and his mother are allowed to proceed anonymously. Moreover, while the Federal and Local Rules already permit J.D. to proceed using his initials, *see* Fed. R. Civ. P. 5.2(a)(3); Local Civ. R. 5.4(f)(2), J.D. is incarcerated in a facility that can hold a maximum of sixty young people. If his initials or his mother's name are disclosed, his identity will be readily ascertainable. This Court should, accordingly, allow J.D. and his mother to proceed pseudonymously.

### A. Pseudonyms Are Necessary to Protect J.D.'s Highly Personal Information.

J.D. and his mother have a strong interest in proceeding anonymously to protect the sensitive and personal information this litigation entails. *See* Declaration of Plaintiff, Pl. Ex. 1, paras. 3-10 ("J.D. Decl."); Declaration of Jane Doe, Ex. 2, paras. 4-6 ("Jane Doe Decl."). J.D.'s allegations about the assault he experienced while in DYRS custody and the harm he suffered as a consequence require him to reveal details about his mental health and medical histories, his status as an individual with disabilities, his physical abuse at the hands of DYRS guards, and his juvenile delinquency record. *See* Compl., ECF No. 1, paras. 16-84, 110. Each of these categories implicates substantial privacy concerns. As courts have explained, "[t]he disabilities and medical histories of plaintiffs—including their status a[s] individuals with disabilities—are paradigmatically 'sensitive' and 'highly personal.'" *Charles H. v. District of Columbia*, No. 1:21-cv-00997, 2021 U.S. Dist. LEXIS 252646, at *6 (D.D.C. Apr. 9, 2021). The details of J.D.'s physical abuse by DYRS staff and his record as a minor involved in the juvenile delinquency system are also quintessentially sensitive. *See, e.g.*, *In re Sealed Case*, 971 F.3d at 327 (explaining that "sensitive and highly personal" information "commonly involves intimate issues such as . . . the identity of abused minors"); *Doe* v. *Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022) ("[P]arty anonymity ordinarily will be warranted . . . [in] suits that are bound up with a prior proceeding made confidential by law . . . [,] when denying anonymity in the new suit would significantly undermine

4

the interests served by that confidentiality."); *Doe v. Bates*, No. 3:18-cv-1250-SMY-RJD, 2018 U.S. Dist. LEXIS 161981, at *3 (S.D. Ill. Sep. 21, 2018) (granting a plaintiff leave to proceed anonymously so as not to "unravel the protections afforded to his juvenile record").

Indeed, both Congress and the District government have recognized the importance of maintaining the confidentiality of the medical, disability, and juvenile delinquency records this litigation entails and have taken comprehensive steps to protect these records from unnecessary disclosure. The Health Insurance Portability and Accountability Act prohibits the disclosure of individually identifiable health information, including medical and mental health records. *See* 42 U.S.C. § 1320d-6(a). The Individuals with Disabilities Education Act requires federal, state, and local education agencies to maintain the confidentiality of "personally identifiable data, information, and records" related to a student's disability and special education. 20 U.S.C. § 1417(c); *see also* 5-E D.C.M.R. § 2603 (protecting the privacy of student records). District of Columbia law further protects the confidentiality of young people involved in the juvenile legal system. Under D.C. Code § 2-1515.06(a), "[r]ecords pertaining to youth who are currently in or were previously in the custody of [DYRS] shall be privileged and confidential[.]" Juvenile case records, including notices of arrest, are similarly confidential. *See* D.C. Code § 16-2331(b) (proscribing disclosure of juvenile case records); D.C. Code § 16-2335(h) (granting individuals a right not to disclose their "juvenile delinquency history in an application for employment, education, or housing").

Allowing J.D. to proceed under a pseudonym is necessary to protect the confidentiality of his medical and mental health records, his disability status, and his juvenile delinquency records. Although the Federal and Local Rules already require the use of J.D.'s initials because of his status as a minor, *see* Fed. R. Civ. P. 5.2(a)(3); Local Civ. R. 5.4(f)(2), J.D. is currently held in a small

5

juvenile detention facility that holds a maximum of sixty children. Off. of Indep. Juvenile Just. Facilities Oversight, *DYRS Secure Facilities Population Data Over Time*, https://oijjfo.dc.gov/page/dyrs-secure-facilities-population-data-over-time (last visited Apr. 22, 2025). As of April 21, 2025, the facility held only fifty children. *Id.* (choose "New Beginnings"; then select date). If J.D. were required to proceed using his initials, he would be readily identifiable within this small population, revealing the confidential information described above. *See* J.D. Decl., Pl. Ex. 1, para. 11.

Similarly, J.D.'s privacy and confidentiality would evaporate if his mother were required to proceed using her real name. As courts have acknowledged, the privacy interests of parents and children become "intractably intertwined" if disclosing a parent's identity "could jeopardize the child's confidentiality." *J.W. v. District of Columbia*, 318 F.R.D. 196, 199 (D.D.C. 2016) (internal quotation marks omitted). Such is the case where, for instance, parents file suit with their child or on their child's behalf in cases involving a child's education, disability, or medical information. *See, e.g., id.* (noting that "courts have concluded that parents may proceed anonymously" in cases brought on behalf of their children under the Individuals with Disabilities Education Act to "'protect the family and child from further embarrassment and publicity regarding the child's disability'" (quoting *Doe v. Alfred*, 906 F. Supp. 1092, 1093 n.1 (S.D.W. Va. 1995))); *Courtenay J. v. CIGNA Health & Life Ins. Co.*, No. 25-cv-80 (JEB), 2025 U.S. Dist. LEXIS 22831, at *4 (D.D.C. Feb. 7, 2025) (concluding that anonymity was necessary for parent in case alleging that son was wrongfully denied health insurance coverage because, if parent's identity were disclosed, "the public could easily uncover [the son's] confidential . . . records[] and personally identifiable information" (quoting *J.W.*, 318 F.R.D. at 200)); *McCutchen v. Becerra*, No. 1:21-cv-01112, 2021 U.S. Dist. LEXIS 81416, at *7, 10 (D.D.C. Apr. 23, 2021) (granting motion to proceed under

6

pseudonym by minor plaintiffs' next friends in case regarding access to Medicaid services and children's medical information). "Although it is the adult caregiver . . . whose name[] will be hidden," pseudonymity in these cases "is primarily about protecting the privacy of the child." *D.B. v. District of Columbia*, No. 1:21-cv-00670, 2021 U.S. Dist. LEXIS 253261, at *6 (D.D.C. Mar. 11, 2021).

Anonymity for J.D.'s mother is essential to protect to protect the highly personal information about J.D. that this litigation involves. While J.D.'s mother brings this suit as his next friend, the case concerns J.D.'s medical and mental health records, his disability status, and his juvenile delinquency records. And as in *J.W.*, "the public could easily learn [J.D.]'s identity if his [mother]'s name[] . . . were disclosed." *See* 318 F.R.D. at 200. J.D. shares his mother's last name and J.D.'s mother has been in consistent touch with DYRS staff on J.D.'s behalf. *See* J.D. Decl., Pl. Ex. 1, para. 11; Jane Doe Decl., Pl. Ex. 2, para. 7. Without pseudonymity for J.D.'s mother, any protection J.D. gains through his own anonymity will be "eviscerated." *J.W.*, 318 F.R.D. at 199.

### B. J.D. Will Be Vulnerable to Retaliation and Psychological Harm if He or His Mother Are Identified.

Pseudonymity for J.D. and his mother is also necessary to protect J.D. from retaliation by DYRS staff, bullying from his peers, and the potential damage of publicly reliving his trauma.

First, J.D. has a well-founded fear that revealing his identity will lead to retaliation by DYRS staff. As courts have recognized, incarcerated plaintiffs are particularly vulnerable to retaliation by corrections staff, and this risk can justify proceeding anonymously. *See, e.g.*, *Charles H.*, 2021 U.S. Dist. LEXIS 252646, at *7 (concluding that incarcerated plaintiffs' fear that "staff might resent the 'systemic changes'" that the plaintiffs advocated for and, thus, retaliate against them, weighed in favor of granting pseudonymity (citation omitted)); *Jones v. Trump*, No. 25-cv-

7

401 (UNA), 2025 U.S. Dist. LEXIS 26370, at *5–6 (D.D.C. Feb. 13, 2025) (explaining that the prospect of retaliation supported granting anonymity to an incarcerated transgender plaintiff who feared reprisal from prison staff).

Here, J.D. is currently committed to the care and custody of DYRS and held in a DYRS facility. Through this litigation, he challenges DYRS's custom of using excessive force to punish the children in its care when staff perceive them to have misbehaved and seeks redress for a horrific assault perpetrated against him by DYRS employees. As the Complaint alleges, a DYRS employee attacked J.D. while a supervisor watched, breaking J.D.'s jaw and forcing him to be hospitalized. *See* Compl., ECF No. 1, paras. 41–50, 58–64. J.D.'s assault was not a one-time occurrence but part of a well-documented pattern in which DYRS staff punch, kick, choke or otherwise use excessive force to punish children when they believe that they have misbehaved. *See id.* at paras. 85–108; *see also* Anya Kreider, *Testimony on Behalf of Disability Rights DC at University Legal Services For the Committee on Recreation, Libraries and Youth Affairs Agency Performance Oversight: Department of Youth Rehabilitation Services*, Disability Rights DC 2 (Mar. 6, 2025), https://cdn.prod.website-files.com/65792ba62c7815e2cdc139a2/67d057b7e2b61e05c4b03947_2025.3.6.DRDC%20DYRS%20Oversight%20Testimony.pdf (explaining that "[t]he number of staff involved the recent incidents [of staff-on-youth assault] is indicative of a culture at DYRS"). J.D. and his mother fear that revealing J.D.'s identity through his initials or his mother's name would likely put him at further risk of harm in an institution where staff physically punish children for acts of perceived defiance. *See* J.D. Decl., Pl. Ex. 1, paras. 11–12; Jane Doe Decl., Pl. Ex. 2, para. 8. They worry that, if his identity is disclosed, J.D. will not be safe even after his release. *See* J.D. Decl., Pl. Ex. 1, para. 12; Jane Doe Decl., Pl. Ex. 2, para. 8. And J.D.'s mother fears that, if her identity is public,

DYRS staff will further retaliate against her by limiting her access to her son, disrupting their communications, and interfering with her ability to advocate on his behalf. *See* Jane Doe Decl., Ex. Pl. 2, para. 9.

Second, J.D. faces a risk of stigmatization and psychological harm if his identity becomes public. Disclosing a plaintiff's identity, "especially in the Internet age," can rise to the level of retaliatory mental harm if it will "subject [a] plaintiff to future unnecessary interrogation, criticism, or psychological trauma." *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014) (explaining that a plaintiff "'may face psychological harm from having [a] sensitive experience made permanently available to anyone with Internet access'" (quoting *E.E.O.C. v. Spoa, LLC*, No. CCB-13-cv-1615, 2013 U.S. Dist. LEXIS 148145, at *13 (D. Md. Oct. 15, 2013))); *see also Courtenay J.*, 2025 U.S. Dist. LEXIS 22831, at *4 (recognizing that [r]isks of mental harm suffice for this factor"). J.D. worries that, if his identity becomes known, he would be forced to publicly relive his assault will cause him stress and anxiety, exacerbating his trauma. *See* J.D. Decl., Pl. Ex. 1, para. 13. He is also concerned that if the details of his disability, mental health, and trauma contained in the Complaint become public, he will be bullied by his peers. *See id.* at para. 14. The risks of retaliation and mental harm J.D. will face if his identity is revealed strongly supports allowing him and his mother to proceed under pseudonyms.

### C. J.D.'s Age Strongly Counsels in Favor of Pseudonymity.

The third factor—J.D.'s age—adds additional support to his request. Courts often analyze this factor by looking at the plaintiff's age when the cause of action arose. *See, e.g.*, *Courtenay J.*, 2025 U.S. Dist. LEXIS 22831, at *5. And they have been clear that requests for anonymity made by minors "must be assessed 'in light of the special vulnerability of [a] child-plaintiff[].'" *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153 (D.D.C. 2011) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). When J.D. was assaulted, he was only fourteen years old. *See* J.D.

9

Decl., Pl. Ex. 1, para. 8; *see also* Compl., ECF No. 1 at para. 17. The case, thus, "concerns, in substantial part, confidential medical and educational records from when he was younger." *T.F. v. District of Columbia*, No. 23-cv-3612, 2023 U.S. Dist. LEXIS 245979, at *5 (D.D.C. Dec. 7, 2023). Now at seventeen, J.D. is still a minor. *See* J.D. Decl., Pl. Ex. 1, para. 2. Moreover, while J.D. is nearing the age of majority, courts routinely weigh this factor in favor of teenage plaintiffs even after they turn eighteen. *See Courtenay J.*, 2025 U.S. Dist. LEXIS 22831, at *5 (collecting cases).

J.D.'s age likewise supports granting pseudonymity to his mother, whose age should be assessed in reference to J.D.'s. *See J.W.*, 318 F.R.D. at 201 (explaining that, where "the person who will be most affected by the lack of anonymity . . . is a minor . . . [this] factor favors anonymity"); *see also D.B.*, 2021 U.S. Dist. LEXIS 253261, at *7 (noting that protecting the identity of a child's caregiver "serves primarily to protect the privacy interests of the minor child").

### D. The Mix of Defendants Does Not Preclude Pseudonymity.

The fourth factor laid out in *In re Sealed Case* looks at the type of defendant, 931 F.3d at 97, and the nature of the relief sought, *Doe v. Blinken*, No. 24-cv-1629 (JEB), 2024 U.S. Dist. LEXIS 242095, at *6-7 (D.D.C. June 11, 2024). "[A]nonymous litigation is more acceptable when the defendant is a governmental body," *J.W.*, 318 F.R.D. at 201, and when a plaintiff requests individualized relief against that governmental body, *Blinken*, 2024 U.S. Dist. LEXIS 242095, at *7.

In this case, J.D. brings claims against a governmental body—the District of Columbia—and two individual defendants who, at the time of the alleged assault, were employees of the District. He also seeks a mix of individualized and systemic relief. This factor, accordingly, is "neutral," *Doe v. McHenry*, No. 25-cv-286, 2025 U.S. Dist. LEXIS 34937, at *12 (D.D.C. Jan. 31, 2025), but courts in this Circuit often grant leave to proceed under pseudonym where plaintiffs

bring systemic claims and claims against individual defendants, *see, e.g.*, *Emp. #1*, 694 F. Supp. 3d at 115 (allowing plaintiff to proceed under pseudonym in case that included individual defendants); *Courtenay J.*, 2025 U.S. Dist. LEXIS 22831, at *6–7 (same); *Doe v. Benoit*, No. 1:19-cv-01253, 2019 U.S. Dist. LEXIS 240093, at *12–13 (D.D.C. Apr. 30, 2019) (same); *Jones*, 2025 U.S. Dist. LEXIS 26370, at *6–7 (granting plaintiff leave to proceed under pseudonym in case seeking systemic relief); *Sponsor v. Mayorkas*, No. 23-cv-712 (JEB), 2023 U.S. Dist. LEXIS 48809, at *5–6 (D.D.C. Mar. 22, 2023) (same). Even if this Court were to find that this factor weighs in favor of disclosure, it would not outweigh J.D. and his mother's otherwise strong interest in anonymity that supports their request to proceed under pseudonyms. *See In re Sealed Case*, 931 F.3d at 96 (holding that the ultimate consideration in allowing a litigant to proceed anonymously is whether their "legitimate interest in anonymity" outweighs any "countervailing interests in full disclosure").

### E. Granting J.D.'s Motion Poses No Risk of Unfairness To Defendants.

Finally, allowing J.D. and his mother to proceed under pseudonyms poses no risk of unfairness or prejudice to Defendants. Anonymity can result in unfairness where it "would pose discovery or other practical litigation obstacles for defendants." *J.W.*, 318 F.R.D. at 201. Another "typical reason courts cite when finding that proceeding anonymously would pose unfairness for a defendant is that the defendant may not know the identity of the person bringing the charges." *Id.* As a result, this factor is "not implicated" where the defendants already know the litigants' identities. *See In re Sealed Case*, 971 F.3d at 326 n.1.

Such is the case here. Defendant District of Columbia knows J.D.'s identity because he is committed to the custody of DYRS, and it knows J.D.'s mother's identity because she is his legal guardian. Defendant District of Columbia also has access to J.D.'s personal information, such as his medical, mental health, and juvenile records, because he is in the care of DYRS. Defendants

11

Lloyd and Davis know J.D.'s identity at the very least because of the assault and the Office of Internal Integrity report that followed. *See* Compl., ECF No. 1 at 78-83. Concealing J.D.'s identity from the public would not hinder Defendants' ability to defend the allegations in this lawsuit. Further, if necessary, J.D. and his mother are willing to provide under seal any necessary identifying information that Defendants may lack. Because Defendants have no countervailing interest in disclosure, this factor weighs in favor of pseudonymity.

## IV. CONCLUSION

J.D. should not be forced to choose between vindicating his rights under the United States Constitution and District law and abandoning them to protect his privacy and well-being, particularly where there is no risk of unfair prejudice to Defendants. J.D., therefore, respectfully requests that this Court grant his motion to allow both him and his mother to proceed anonymously.

DATE: May 2, 2025                    Respectfully submitted,

    */s/ Ellie M. Driscoll*
Ellie M. Driscoll (D.C. Bar No. 90017817)
Marja K. Plater (D.C. Bar No. 90002586)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS & URBAN AFFAIRS
700 14th Street NW, Suite 400
Washington, DC 20005
Tel: (202) 319-1000
ellie_driscoll@washlaw.org
marja_plater@washlaw.org

*Counsel for Plaintiff J.D.*